

PAID

AUG 1 1 2026

CLERK, U.S. DISTRICT COURT
COURT 4612

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

FILED

2026 AUG 11 PM 1: 50

CLERK U.S. DIST. COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY_____ jji

**MARZENA CHMIELEWSKA,** an Individual, Brand Designer, Brand Creator, and U.S. Trademark Registrant;

> **Plaintiff,**

v.

**THE COUNTRY CLUB (NORTHILL) LTD,** a Foreign Corporation incorporated in England, doing business in the United States and the State of California under the name "Royal Equestrian";

**PATRICE BATES** (a/k/a "Patsy Bates"), an Individual, Director, and Controlling Officer of The Country Club (Northill) Ltd; and

**KATHRYN MARGARET BATES,** an Individual, Director, Controlling Officer, and Agent of The Country Club (Northill) Ltd,

> **Defendants.**

**Case No.:** [To be assigned by Clerk]   2:26-CV-08912-JFW-SSC (Cx)

**COMPLAINT FOR:**

1. Willful Trademark Infringement (15 U.S.C. § 1114)
2. Federal False Designation of Origin and Passing Off (15 U.S.C. § 1125(a))
3. Federal Trademark Counterfeiting (15 U.S.C. §§ 1116, 1117)
4. California Statutory Unfair Competition (Cal. Bus. & Prof. Code § 17200 et seq.)
5. Common Law Unfair Competition

**DEMAND FOR JURY TRIAL**

## I. INTRODUCTION & NATURE OF THE ACTION

1. This is an action for willful federal trademark infringement, trademark counterfeiting, false designation of origin, and unfair competition under the Lanham Act, 15 U.S.C. § 1051 et seq., and the laws of the State of California.

2. Plaintiff Marzena Chmielewska is the designer, creator, and sole federal registrant of the internationally renowned luxury equestrian fashion brand "ROYAL EQUESTRIAN," holding valid, active trademark registrations in the United States, the United Kingdom, the European Union, and Australia — all flowing from an unbroken priority date of January 2019. Plaintiff licenses the ROYAL EQUESTRIAN marks to House of Royal Group LLC, a

Delaware limited liability company that serves as the exclusive commercial operator of the brand, conducting business throughout the United States and worldwide, with its principal California-based operations running the official global storefront at www.royalequestrian.net.

3. Plaintiff has built the ROYAL EQUESTRIAN brand into a recognized luxury equestrian fashion identity with documented commercial presence across the United States, including: original designed apparel collections bearing the registered mark; a Macy's retail partnership; a product placement on Season 15 of the Bravo television series *Real Housewives of Beverly Hills* reaching millions of U.S. viewers; press releases distributed across the USA TODAY Network via EIN Presswire; and an active social media audience with millions of content views reaching U.S. and international equestrian consumers. Plaintiff operates internationally, with documented sales and brand ambassador relationships in the United Kingdom, participation in international trade events including Spoga Horse, and a global customer base across multiple countries. House of Royal Group LLC conducts this international commercial activity as a Delaware LLC operating from its principal California base under license from Plaintiff.

4. Defendant THE COUNTRY CLUB (NORTHILL) LTD (Company No. 10222950) is a foreign corporation incorporated in England that operates an online retail platform and social media accounts under the identical name "Royal Equestrian," using the domains royalequestrian.com and royalequestrian.co.uk, and the Instagram handle @royal_eq. The company is currently controlled and operated by its two directors: Defendant PATRICE BATES (a/k/a "Patsy Bates"), appointed 29 April 2024, and Defendant KATHRYN MARGARET BATES, appointed 17 September 2024. Defendants are a mother-and-daughter partnership who operate the corporate Defendant as their personal business enterprise.

5. None of the Defendants owns, designs, or manufactures any original product under the "Royal Equestrian" name. None of the Defendants holds a trademark registration for "Royal Equestrian" in any jurisdiction anywhere in the world. Defendants operate as a multi-brand reseller of third-party equestrian products, exploiting Plaintiff's federally registered brand identity to intercept U.S. consumer traffic and profit from the resulting confusion.

6. Despite receiving formal legal notice of Plaintiff's rights on November 3, 2025 — to which Defendant Kathryn Margaret Bates responded not by asserting any prior right but by offering to sell the business — Defendants have willfully and continuously refused to cease their unauthorized use of Plaintiff's registered mark. This action seeks a permanent injunction, disgorgement of profits, treble damages, personal liability of the individual Defendants, and all other available relief.

## II. JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a). This Court has supplemental jurisdiction over state and common law claims pursuant to 28 U.S.C. § 1367.

8. This Court has personal jurisdiction over Defendants because Defendants: (a) actively transact commercial business with consumers across the United States and in California through an interactive e-commerce website with U.S. consumer checkout enabled and the

United States pre-selected as a shipping destination; (b) operate social media accounts and advertising campaigns directed at U.S. and California consumers, including 12 documented active Google Ads campaigns running under the "Royal Equestrian" brand name and targeting U.S. consumers; (c) ship goods into this District and process financial transactions from California consumers; (d) use a brand name and domain architecture that diverts California-based consumer searches intended for Plaintiff's California-operated brand; and (e) have engaged in a sustained, deliberate pattern of commercial conduct specifically targeting U.S. consumers, causing documented harm within this District.

9.  Venue is proper in the Central District of California, Western Division, pursuant to 28 U.S.C. § 1391(b) and (c). Plaintiff Marzena Chmielewska resides in Los Angeles County, California. House of Royal Group LLC, Plaintiff's licensee, maintains its principal commercial operations in California and conducts business throughout the United States and worldwide. A substantial part of the events and consumer harm giving rise to this action — including documented actual consumer confusion by U.S. consumers who contacted Plaintiff's California operations — occurred within this District. Defendants, as foreign individuals and a foreign entity conducting deliberate commercial operations directed at this District, are subject to personal jurisdiction here.

### III. THE PARTIES

#### Plaintiff

10. Plaintiff MARZENA CHMIELEWSKA is an individual residing in Los Angeles County, California. She is the designer, creator, and sole registrant of the ROYAL EQUESTRIAN trademark portfolio, including USPTO Registration Nos. 7,411,726 (figurative mark, Classes 18 and 25) and 8,293,519 (word mark, Class 35).

11. Plaintiff licenses use of the ROYAL EQUESTRIAN marks to HOUSE OF ROYAL GROUP LLC, a limited liability company organized under the laws of the State of Delaware, which conducts business throughout the United States and worldwide with principal California-based operations. That company is the exclusive commercial operator and licensee of the ROYAL EQUESTRIAN brand and operates the official brand storefront at www.royalequestrian.net. Plaintiff brings this action in her individual capacity as owner of record of the trademark registrations identified above.

#### Defendants

12. Defendant THE COUNTRY CLUB (NORTHILL) LTD (Companies House No. 10222950) is a corporation incorporated in England, registered address in England. Defendant operates under the trade name "Royal Equestrian" via royalequestrian.com, royalequestrian.co.uk, and @royal_eq on Instagram, conducting regular commercial activity directed at and transacting with consumers throughout the United States, including California.

13. Defendant PATRICE BATES (a/k/a "Patsy Bates") is an individual residing, on information and belief, in England. She is a Director and controlling officer of The Country Club (Northill) Ltd, appointed 29 April 2024, and is personally responsible for the policies,

commercial decisions, and infringing conduct of the corporate Defendant described herein. At all relevant times, Defendant Patrice Bates directed, authorized, and personally participated in the trademark infringement and deceptive business practices alleged in this Complaint.

14. Defendant KATHRYN MARGARET BATES is an individual residing, on information and belief, in England. She is a Director and controlling officer of The Country Club (Northill) Ltd, appointed 17 September 2024. She is the individual who, acting as agent and representative of the corporate Defendant, received Plaintiff's November 3, 2025 trademark assertion letter, responded under the signature block "Royal Team, Royal Equestrian" with an offer to sell the business, and thereafter continued the infringing operations in defiance of Plaintiff's Cease and Desist. Defendant Kathryn Margaret Bates is personally liable for the infringement as a direct participant and controlling officer who directed, authorized, and personally executed the infringing conduct.

## IV. PLAINTIFF'S SUPERIOR INTELLECTUAL PROPERTY RIGHTS

15. Plaintiff Marzena Chmielewska has continuously designed, used, and developed the "ROYAL EQUESTRIAN" brand identity since at least January 2019, as established by platform-verified public digital records.

16. Plaintiff holds the following valid, active trademark registrations:

**United States (USPTO):** Registration No. 7,411,726 — ROYAL EQUESTRIAN (figurative mark: royal crest with griffin, unicorn, crown, and banner) — Class 18 (bags, leather goods, and accessories) and Class 25 (clothing, apparel, and footwear). Registered June 11, 2024. First use in commerce: February 1, 2019. Registration No. 8,293,519 — ROYAL EQUESTRIAN (standard character word mark) — Class 35 (retail clothing stores; online retail clothing store services; retail equestrian tack and clothes stores; pop-up retail store services featuring equestrian gear and fashion clothing; retail sporting goods stores). Registered June 9, 2026. First use in commerce: January 10, 2018. Filed November 12, 2025.

**United Kingdom (UKIPO):** Registration No. UK00918035935 — filed 14 March 2019 — Classes 18, 25, and 35.

**European Union (EUIPO):** Registration No. 018035935.

**Australia (IP Australia):** Registration No. 2346503.

17. No Defendant holds any trademark registration for "Royal Equestrian" in the United States, the United Kingdom, the European Union, Australia, or in any other jurisdiction anywhere in the world.

18. Plaintiff's brand is carried on original designed apparel collections — including the signature Cecile Breeches collection — bearing the registered mark on each original product designed and commercially distributed by Plaintiff as a distinct luxury equestrian fashion identity.

## V. DEFENDANTS' WILLFUL INFRINGEMENT AND BAD-FAITH CONDUCT

### A. The Identity Capture Scheme

19. Defendants operate an online retail store and social media presence under the name "Royal Equestrian" via royalequestrian.com, royalequestrian.co.uk, and @royal_eq on Instagram. Defendants use this name — identical in every material respect to Plaintiff's federally registered mark — to intercept U.S. consumer searches and redirect web traffic intended for Plaintiff's brand.

20. Defendants are multi-brand resellers. They do not own, design, or manufacture any product under the "Royal Equestrian" name. Defendants use the mark solely as a commercial vehicle to capture consumer searches and brand recognition built by Plaintiff, then profit from that captured traffic by selling third-party brands including KASK, Samshield, Parlanti, Cavalleria Toscana, De Niro Boot Co., Charles Owen, Dy'on, Veredus, and others. Defendants' website checkout actively accepts orders from United States consumers, with the United States pre-selected as a shipping destination. Defendants further operate 12 documented active Google Ads campaigns running under the "Royal Equestrian" brand name and targeting U.S. consumers, as verified through Google's Ads Transparency Center (Advertiser ID: AR18180793376549371905).

Plaintiff operates as a luxury equestrian brand running active advertising campaigns on Meta (Facebook and Instagram) and Google, including high-production video content that reaches millions of consumers — individual videos have achieved 1.9 million views and the brand's Instagram account @royalequestriancollection has 88,100 followers with 291,400 views in a single 30-day period. Consumers who discover Plaintiff's brand through these advertising campaigns and viral video content then search "Royal Equestrian" online. Those consumers find Defendants' website royalequestrian.co.uk operating under the identical name and selling third-party brands — Samshield, KASK, Parlanti, and 19 additional brands. Those consumers purchase from Defendants believing they are buying from Plaintiff's brand. They then contact Plaintiff — the brand they originally discovered through advertising — to follow up on orders placed with Defendants. This is the precise mechanism by which Defendants exploit Plaintiff's advertising investment and brand recognition to capture Plaintiff's consumers. Every dollar Plaintiff invests in advertising drives consumers to search "Royal Equestrian" — and Defendants capture those consumers at the point of search.

### B. Documented Actual Consumer Confusion

21. Defendants' conduct has caused severe, widespread, and documented actual consumer confusion in the United States. U.S. consumers have directly contacted Plaintiff at www.royalequestrian.net and Plaintiff's social media channels, believing Plaintiff to be the corporate parent, manufacturer, or authorized operator of Defendants' storefront. Specifically, at least one U.S. consumer purchased a Samshield helmet through Defendants' platform under the mistaken belief that they were transacting with Plaintiff's brand, and subsequently contacted Plaintiff to follow up on that purchase — a direct, documented instance of actual confusion causing commercial harm to Plaintiff.

### C. Prior Notice — Meta Platforms Enforcement and Deliberate Circumvention

22. Defendants have long possessed actual and formal notice of Plaintiff's superior trademark rights. Plaintiff filed a formal intellectual property complaint against Defendants with Meta Platforms, Inc. Meta independently verified Plaintiff's legal priority and permanently terminated and deactivated Defendants' original Facebook business page operating under the "Royal Equestrian" name.

23. In direct and deliberate defiance of this enforcement action, Defendants immediately created a new replacement Facebook business page and a new Instagram profile under the handle @royal_eq. This calculated circumvention demonstrates that Defendants view enforcement actions as obstacles to be routed around. Only a Court Order will produce compliance.

**D. The Cease and Desist Correspondence — Defendants' Admission of Inferior Rights**

24. On November 3, 2025, Plaintiff sent a formal trademark assertion letter to Defendants at info@royalequestrian.co.uk, identifying Plaintiff's globally registered trademark rights, documenting the ongoing consumer confusion and commercial damage caused by Defendants' use of the identical name, and offering Defendants two options: (1) enter an authorized reseller arrangement, or (2) cease all use of the "Royal Equestrian" name immediately.

25. Defendant Kathryn Margaret Bates, responding under the signature block "Royal Team, Royal Equestrian," replied to Plaintiff's trademark assertion letter. In that response, Defendant Kathryn Margaret Bates did not assert any prior trademark right, did not produce any trademark registration, did not challenge Plaintiff's claim, and did not deny the existence of consumer confusion. Instead, she offered: "If you would like to set up a meeting regarding the potential purchase of our business and websites, I would be more than happy to arrange a time."

26. This offer to sell is a dispositive admission of inferior rights. A party confident in the superiority of its own rights does not respond to a trademark assertion by offering to sell its business — it defends its position. Defendant Kathryn Margaret Bates's offer to sell constitutes an implicit and irrevocable acknowledgment that Plaintiff's trademark position was superior and that Defendants had no legally defensible right to continue using the name.

27. On November 4, 2025, Plaintiff issued the formal Cease and Desist letter, explicitly rejecting Defendants' buyout proposal: "We are not interested in purchasing your store, your domains or any of your business assets." The Cease and Desist demanded that Defendants immediately and permanently cease all commercial use of the "Royal Equestrian" name.

28. Defendants refused to comply. Despite receiving unambiguous formal legal notice of Plaintiff's superior registered rights, Defendants continued to operate their storefront, social media accounts, and U.S.-directed commercial activities under the identical mark without interruption. Defendants' post-notice continuation of infringement is willful as a matter of law.

29. At all times relevant to this action, Plaintiff has actively and continuously enforced their trademark rights against Defendants through multiple formal channels, including: formal intellectual property complaints to Meta Platforms, Inc. resulting in permanent termination of Defendants' Facebook business page; trademark complaints to Google LLC regarding Defendants' unauthorized Google Ads campaigns running under Plaintiff's registered mark;

DMCA copyright complaints to Google targeting Defendants' unauthorized use of Plaintiff's proprietary product photography; abuse complaints to domain registrars including Dynadot and 123-Reg regarding Defendants' infringing domain operations. Plaintiff has further published official trademark infringement notices on their website at www.royalequestrian.net publicly identifying Defendants' website as unauthorized. At no time have Plaintiff represented their goods or services as originating from Defendants, and no basis exists for any claim of reverse passing off or unfair competition by Defendants against Plaintiff. The entirety of Plaintiff's conduct constitutes active, documented enforcement of validly registered intellectual property rights against an unauthorized infringer.

### E. The Public "Bait-and-Switch" Admission

29. When formally confronted with an official corporate notice from House of Royal Group LLC, Defendants' owner posted the following public reply under the official merchant handle "Royal Equestrian (Owner)":

> *"We can certainly confirm that we are 100% nothing to do with the company you mention. We are in no way affiliated with their products, website or service. We are a UK supplier selling top equestrian brands."*

30. This public statement is a confession of the bait-and-switch scheme. Defendants simultaneously: (a) admitted having no affiliation with Plaintiff; (b) confirmed they are a reseller of third-party brands, not an original brand creator; (c) refused to cease use of the identical name; and (d) continued U.S.-directed commercial operations. A business that acknowledges it has "100% nothing to do" with the trademark holder has no legitimate basis to continue trading under that holder's registered mark.

### F. Unauthorized Use of Plaintiff's Proprietary Photography and Content

31. Defendants have further misappropriated Plaintiff's proprietary product photography and creative content, displaying these materials on Defendants' storefront and in online search engine listings. This compounded the consumer confusion by causing U.S. consumers searching for Plaintiff's products to encounter Defendants' storefront presenting Plaintiff's own imagery in a commercial context falsely suggesting affiliation with or authorization from Plaintiff.

32. Defendants sell products from numerous third-party equestrian brands to consumers located in the United States through their website royalequestrian.co.uk, with U.S. consumer checkout enabled, U.S. shipping options offered via UPS and DHL Express, and product pricing displayed in U.S. dollars. Plaintiff has documented active U.S.-directed transactions on Defendants' website, including the processing of orders for delivery to U.S. addresses at prices displayed in U.S. dollars. All revenues generated by Defendants from U.S. consumers are generated entirely under Plaintiff's registered trademark name "Royal Equestrian," and all such U.S. revenues are subject to disgorgement in this action. Plaintiff reserves the right to seek full discovery into the scope of Defendants' U.S. commercial activity, including all transaction records, order histories, and brand authorization documents relevant to Defendants' sales to U.S. consumers.

33. Defendants' infringing commercial infrastructure has further enabled a coordinated scheme operating through fake storefronts including royalehorse.shop and

royalequestriangear.shop. These fake sites reproduce Plaintiff's copyrighted product photography, display Plaintiff's registered trademark "ROYAL EQUESTRIAN" as their brand identity, and operate consumer contact forms that direct all consumer inquiries — including consumer names and email addresses — to support@royalequestrian.com. That email address uses the royalequestrian.com domain which is controlled by Defendants: Plaintiff's trademark assertion letter of November 3, 2025 was sent to info@royalequestrian.com and was answered by Defendants from royalequestrian.co.uk, confirming Defendants control both email addresses under the royalequestrian.com domain. Every consumer who contacts these fake sites believing they are reaching Plaintiff's brand is in fact submitting their personal contact information directly into Defendants' commercial infrastructure. This constitutes trademark infringement, copyright infringement of Plaintiff's creative works, and an active data harvesting scheme that captures Plaintiff's potential customers under false commercial pretenses.

34. Technical evidence confirms Defendants' control of this email infrastructure. An MX record lookup for royalequestrian.com conducted on July 27, 2026 reveals that email for that domain is hosted on Microsoft Office 365, routed through royalequestrian-com.mail.protection.outlook.com (IP: 52.101.68.21, Microsoft Corporation). Microsoft 365 requires verified domain ownership before permitting email configuration — only the party who controls the royalequestrian.com domain DNS records could have established this email account. Defendants have confirmed their control of royalequestrian.com by receiving and responding to Plaintiff's trademark assertion letter sent to info@royalequestrian.com. Accordingly, Defendants established and control the Microsoft 365 email tenant under which support@royalequestrian.com operates, and all consumer data submitted through the fake storefronts flows directly into Defendants' Microsoft 365 inbox. Plaintiff will seek a Rule 45 subpoena to Microsoft Corporation compelling production of all account records, account holder identity, billing information, and all emails received at support@royalequestrian.com. A true and correct screenshot of the MX record lookup is attached to the Declaration as Exhibit L-2.

35. Defendants' unauthorized US commercial activity further implicates the exclusive distribution agreements of no fewer than 22 brand manufacturers who maintain exclusive US distribution rights or authorized US dealer networks. On information and belief, the manufacturer agreements governing the following brands restrict or prohibit unauthorized European retailers from shipping products to US consumers: Parlanti; Veredus; Helite; Samshield; KASK; GPA; Passier; Antares Riding Hats; De Niro Boot Co; Fabbri Boots; Stübben; Pikeur; Cavalleria Toscana; Equiline; Flex-On; Charles Owen; KEP Italia; Sergio Grasso; Sprenger; Dy'on; Vestrum; and Zandona. Plaintiff reserves all rights to seek discovery of Defendants' dealer agreements and territorial restriction communications for each of the foregoing brands, and to notify each brand's US exclusive distributor or authorized dealer network of Defendants' unauthorized US commercial activity.

The harm extends beyond individual consumer confusion to systematic destruction of Plaintiff's wholesale commercial channel. Plaintiff is a pure luxury brand — every product bearing the ROYAL EQUESTRIAN trademark is an original design created by CC, Plaintiff's founder. Plaintiff's commercial strategy depends entirely on independent equestrian boutiques and retailers recognizing Royal Equestrian as a luxury design house — a brand they can carry alongside Samshield, KASK, Parlanti, and other third-party brands.

Defendants have destroyed this channel by operating as a multi-brand retailer — selling Samshield, KASK, Parlanti, and 19 additional brands — under Plaintiff's identical registered trademark. When an independent boutique searches "Royal Equestrian" to evaluate Plaintiff as a wholesale partner, they find Defendants operating as a competing multi-brand retailer selling the same brands that boutique already stocks. That boutique concludes Plaintiff is a competitor — another multi-brand retailer — not a luxury brand they could carry. The wholesale relationship ends before it begins. Plaintiff never knows the opportunity was lost. This silent, invisible, ongoing destruction of wholesale partnerships cannot be quantified and cannot be remedied by any monetary award. It is the most commercially devastating harm Plaintiff suffers — and it compounds every single day Defendants continue operating under Plaintiff's registered trademark name.

37. The foregoing conduct reveals a consistent and deliberate pattern of disregard for legal obligations that extends beyond trademark infringement. Defendants received Plaintiff's formal Cease and Desist in November 2025 and refused to comply. When Meta Platforms terminated Defendants' Facebook page for trademark infringement Defendants immediately recreated the account. Defendants have continued operating under Plaintiff's registered trademark through multiple enforcement actions across multiple platforms without modification to their infringing conduct. On information and belief Defendants have additionally violated the territorial distribution agreements of brand manufacturers whose products they stock by selling those products to US consumers in breach of exclusive US distribution arrangements — demonstrating that their disregard for legal obligations is not limited to Plaintiff's trademark rights but extends to their contractual obligations to their own brand suppliers. This consistent pattern of deliberate disregard for trademark rights, platform enforcement decisions, and contractual obligations demonstrates that Defendants will not voluntarily comply with any legal obligation that interferes with their commercial operations — making injunctive relief essential and supporting a finding of willful infringement under 15 U.S.C. § 1117(b).

38. Defendants further misappropriate Plaintiff's intellectual property by placing a copyright notice — "Copyright © 2026 Royal Equestrian, All rights reserved" — in the footer of automated marketing emails sent to US consumers under the header "ROYAL EQUESTRIAN.COM." This copyright claim is false on two independent grounds. First, copyright law does not protect names or short phrases under 17 U.S.C. § 102(b) — the name "Royal Equestrian" cannot be the subject of copyright protection by any party. Second, Plaintiff holds USPTO Registration No. 8,293,519 — the standard character word mark "ROYAL EQUESTRIAN" — and any intellectual property rights in that name belong exclusively to Plaintiff as the registered word mark owner. Defendants' assertion of copyright ownership in Plaintiff's registered word mark in commercial marketing communications sent to US consumers constitutes a false designation of origin and false representation of intellectual property ownership under 15 U.S.C. § 1125(a).

39. On July 27, 2026 — the date of this filing — Plaintiff conducted a test purchase inquiry on Defendants' website royalequestrian.co.uk by placing a product in the shopping cart and proceeding to the checkout page. The checkout page, attached hereto as Exhibit C, confirms: (a) Defendants actively accept orders from United States consumers — Country/Region showed "United States (US)"; (b) Defendants offer UPS (~2-5 Days) and DHL Express (~2-4 Days) shipping to the United States; (c) Defendants display pricing in US dollars — the total

was displayed as US$713.32; (d) Defendants' checkout calculates £0.00 VAT specifically for the United States — confirming a deliberately configured US commerce system. Defendants subsequently sent an automated abandoned cart marketing email to the US consumer email address used for the inquiry, attached hereto as Exhibit C-2. That email bears the header "ROYAL EQUESTRIAN.COM" and states in its footer "Copyright © 2026 Royal Equestrian, All rights reserved" — falsely claiming intellectual property ownership in Plaintiff's registered word mark. The product placed in the cart for purposes of this test inquiry was a third-party brand product that on information and belief is subject to exclusive US distribution arrangements prohibiting its sale by European retailers to US consumers — further illustrating Defendants' pattern of using Plaintiff's brand identity and consumer traffic to sell products in violation of multiple simultaneous legal obligations.

## G. Personal Liability of Individual Defendants

32. Defendants Patrice Bates and Kathryn Margaret Bates are personally liable for the trademark infringement and unfair competition alleged herein. Corporate officers and directors who personally participate in, direct, or authorize trademark infringement are individually liable under the Lanham Act regardless of the corporate form. *Comm. for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 823 (9th Cir. 1996).

33. Patrice Bates, as a Director since April 2024 and controlling officer, has personally directed and authorized the infringing commercial operations, approved the strategy of continued infringement after Plaintiff's Cease and Desist, and personally profited from the infringing use of Plaintiff's mark.

34. Kathryn Margaret Bates, as a Director since September 2024, personally received Plaintiff's trademark assertion letter, personally responded under the brand name "Royal Equestrian," personally offered to sell the business as an implicit admission of inferior rights, personally directed the continued infringement after the Cease and Desist was rejected, and personally made the public "100% nothing to do" statement under the merchant handle — all while personally benefiting from the infringing commercial enterprise. Her personal involvement is beyond dispute.

## H. The Full Pattern of Bad Faith — An Attempt to Extort a Designer Into Abandoning Her Own Registered Mark

35. When viewed in its totality, Defendants' course of conduct reveals not a legitimate commercial dispute but a calculated and bad-faith attempt to financially coerce Plaintiff Marzena Chmielewska — the designer and creator of the ROYAL EQUESTRIAN brand — into abandoning enforcement of a trademark she lawfully owns and that Defendants have never held any right to use.

36. The pattern is fully documented and sequential. Defendants first appropriated Plaintiff's registered mark as their store name without authorization. When Meta Platforms enforced Plaintiff's rights and terminated Defendants' Facebook page, Defendants immediately recreated it — demonstrating contempt for enforcement rather than compliance. When Plaintiff sent a formal trademark assertion letter in November 2025, Defendants did not assert any prior right or produce any registration. Instead, Defendant Kathryn Margaret Bates offered to sell the business — a transparent attempt to monetize a name that belongs to Plaintiff by extracting a commercial payment in exchange for ceasing conduct that was

unlawful from the outset. When Plaintiff rejected that attempt, Defendants continued all infringing operations without modification. Throughout all of this, Defendants continued operating under Plaintiff's registered mark, running paid Google Ads campaigns targeting U.S. consumers, and generating revenue under a name they knew they had no right to use.

37. This is not a case of innocent parallel development or good-faith commercial confusion. This is a case of deliberate appropriation followed by escalating bad-faith tactics designed to pressure the legitimate trademark owner into either paying Defendants to stop using her own name, or abandoning the enforcement of rights she lawfully holds across four jurisdictions. Every action Defendants have taken — deliberately recreating their social media accounts after Meta enforcement, publicly admitting they have "100% nothing to do with" Plaintiff while refusing to rebrand, and continuing to run paid U.S. Google Ads campaigns under Plaintiff's registered name after formal Cease and Desist — reflects not a party defending legitimate rights but a party using commercial mechanisms as instruments of financial pressure against an individual designer. The complete pattern of bad faith is now fully exposed: Defendants attempted to extort a designer by demanding she pay them — or surrender enforcement of her own registered trademark — in exchange for their agreement to stop using a name that was never theirs to use. That is not commerce. That is coercion. And it ends here.

38. That pattern of conduct is directly relevant to this Court's assessment of willfulness, bad faith, and the exceptional nature of this case under 15 U.S.C. § 1117(a). It is also the reason Plaintiff seeks not merely an injunction but the full range of available monetary relief — to ensure that a deliberate, sustained, and multi-front campaign of trademark misappropriation directed at an individual designer and creator results in consequences proportionate to the conduct.

## VI. CAUSES OF ACTION

### COUNT I: Willful Trademark Infringement (15 U.S.C. § 1114)

35. Plaintiff incorporates by reference paragraphs 1 through 34.

36. Defendants' unauthorized commercial use of a mark identical to Plaintiff's federally registered mark, USPTO Registration Nos. 7,411,726 and 8,293,519, in connection with identical classes of goods and services in interstate commerce directed at U.S. and California consumers, creates an overwhelming likelihood of confusion, mistake, and deception — confirmed by documented actual consumer confusion already in evidence. Notably, Registration No. 8,293,519 for the word mark "Royal Equestrian" was filed on November 12, 2025 — nine days after Plaintiff sent the formal trademark assertion letter to Defendants — and was registered June 9, 2026, further cementing Plaintiff's exclusive rights in U.S. commerce.

37. Defendants' infringement is willful. Defendants received formal notice of Plaintiff's rights on November 3, 2025, demonstrated awareness of Plaintiff's superior position by offering to sell the business, received a formal Cease and Desist on November 4, 2025, and continued all infringing conduct in deliberate bad faith. Post-notice continuation is willful as a matter of law. *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400 (9th Cir. 1993).

38. All three Defendants are jointly and severally liable. The individual Defendants personally directed, authorized, and participated in the infringing conduct. *Comm. for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 823 (9th Cir. 1996).

## COUNT II: Federal False Designation of Origin and Passing Off (15 U.S.C. § 1125(a))

39. Plaintiff incorporates by reference paragraphs 1 through 34.

40. Defendants' use of the "Royal Equestrian" name in U.S.-directed commerce constitutes a false designation of origin that is likely to cause — and has in fact caused — confusion among U.S. consumers as to the source, sponsorship, authorization, or affiliation of Defendants' commercial operations. Defendants' own public admission that they have "100% nothing to do" with Plaintiff while simultaneously operating under the identical name is direct proof of false designation of origin in violation of 15 U.S.C. § 1125(a).

## COUNT III: Federal Trademark Counterfeiting (15 U.S.C. §§ 1116, 1117)

41. Plaintiff incorporates by reference paragraphs 1 through 34.

42. Defendants have knowingly and willfully used a spurious reproduction of Plaintiff's registered mark in connection with the same classes of goods and services covered by Plaintiff's USPTO registrations. Defendants' ongoing commercial use of the identical mark in identical trade classes in U.S.-directed commerce constitutes trademark counterfeiting within the meaning of 15 U.S.C. §§ 1116 and 1117.

## COUNT IV: California Statutory Unfair Competition (Cal. Bus. & Prof. Code § 17200 et seq.)

43. Plaintiff incorporates by reference paragraphs 1 through 34.

44. Defendants' acts — including unauthorized use of Plaintiff's registered mark in California-directed commercial activity, misappropriation of Plaintiff's product photography, deliberate consumer misdirection, and persistent infringement after formal legal notice — constitute unlawful, unfair, and fraudulent business practices within the meaning of California Business and Professions Code § 17200 et seq., causing financial harm, reputational damage, and consumer confusion directly injuring Plaintiff's California-based and nationwide commercial operations.

## COUNT V: Common Law Unfair Competition

45. Plaintiff incorporates by reference paragraphs 1 through 34.

46. Defendants' conduct constitutes common law unfair competition. By deliberately misappropriating the goodwill and commercial identity built by Plaintiff through years of original design work, original collections, media placements, retail partnerships, and consumer relationship-building, Defendants have engaged in deceptive trade practices

causing irreparable harm to Plaintiff's brand equity and commercial standing across the United States and internationally.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendants THE COUNTRY CLUB (NORTHILL) LTD, PATRICE BATES, and KATHRYN MARGARET BATES, jointly and severally, and award the following relief:

### A. PERMANENT INJUNCTION

An Order permanently enjoining Defendants, their officers, directors, agents, employees, successors, assigns, and all persons acting in active concert or participation with them, from: (i) using the name "ROYAL EQUESTRIAN" or any confusingly similar variation in any commercial context directed at consumers in the United States; (ii) operating any website, social media account, or online listing under or incorporating that name targeting U.S. consumers; and (iii) representing to any U.S. consumer or business that Defendants are affiliated with, sponsored by, or authorized by Plaintiff or the ROYAL EQUESTRIAN brand.

### B. MANDATORY TRANSFER OF DOMAIN NAMES

An Order compelling Defendants to immediately transfer ownership and control of the domains royalequestrian.com and royalequestrian.co.uk to Plaintiff. In the alternative, an Order compelling permanent deactivation of those domains for all content targeting U.S. consumers.

### C. MANDATORY SOCIAL MEDIA DEACTIVATION AND TRANSFER

An Order compelling Defendants to immediately cease all commercial operations under the "Royal Equestrian" name on Instagram (specifically @royal_eq), Facebook, and any other social media platform, and to remove or transfer to Plaintiff all accounts and handles incorporating the "Royal Equestrian" mark.

### D. REMOVAL OF MISAPPROPRIATED CONTENT

An Order compelling Defendants to immediately: (i) remove from all online platforms, storefronts, search engines, Google Shopping listings, Google Images, and any other digital channel all product photography, creative content, or brand imagery owned by Plaintiff that has been misappropriated and used without authorization; (ii) remove, de-list, or cause to be removed all search engine listings, Google Shopping entries, Google Merchant Center feeds, and paid search advertisements in which the name "Royal Equestrian" appears as the store name, brand name, or merchant identifier in connection with Defendants' business or products; and (iii) remove all meta titles, meta descriptions, structured data, and schema markup on Defendants'

websites that use the name "Royal Equestrian" to identify Defendants' business in search engine results pages, so that no search engine result within the United States displays Defendants' business under the "Royal Equestrian" name.

### E. DISGORGEMENT OF PROFITS

An Order requiring Defendants to account for and disgorge to Plaintiff all gross revenues and profits derived from their unauthorized use of the "Royal Equestrian" mark in connection with U.S.-directed consumers, the precise amount to be determined by the Court based on Defendants' financial records produced in discovery.

### F. TREBLE DAMAGES

An Award of Treble Damages pursuant to 15 U.S.C. § 1117(b), tripling all damages awarded, reflecting the willful, deliberate, and bad-faith nature of Defendants' conduct — including continuation of infringement after formal Cease and Desist notice, deliberate recreation of social media accounts after Meta enforcement, and continued operation of targeted U.S. Google Ads campaigns throughout this dispute.

### G. STATUTORY DAMAGES — IN THE ALTERNATIVE

Statutory Damages pursuant to 15 U.S.C. § 1117(c) of up to $2,000,000 per counterfeit mark per type of good or service sold in U.S. commerce, the precise amount to be determined at trial.

### H. ATTORNEY FEES AND COSTS

An Award of Plaintiff's reasonable attorney fees and all litigation costs pursuant to 15 U.S.C. § 1117(a), this being an exceptional case as demonstrated by Defendants' documented willful infringement, bad-faith continuation after formal notice, and deliberate circumvention of prior Meta enforcement.

### I. PERSONAL JUDGMENT AGAINST INDIVIDUAL DEFENDANTS

An Order entering personal monetary judgment against Defendants Patrice Bates and Kathryn Margaret Bates, jointly and severally with The Country Club (Northill) Ltd, for all damages, disgorgement, and fees awarded herein, reflecting their personal direction of, participation in, and benefit from the infringing enterprise.

### J. PRE-JUDGMENT AND POST-JUDGMENT INTEREST

Pre-judgment and post-judgment interest on all monetary awards at the maximum rate allowed by law.

## K. DESTRUCTION ORDER

An Order requiring Defendants to deliver up for destruction, or permanently remove from all channels of U.S. commerce, all materials, labels, listings, advertising, and digital assets bearing the "Royal Equestrian" name or any confusingly similar mark directed at U.S. consumers.

## L. SUCH OTHER RELIEF

Such other and further relief as this Court deems just, equitable, and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demand a trial by jury on all issues so triable pursuant to the Seventh Amendment to the United States Constitution and Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

MARZENA CHMIELEWSKA

Plaintiff In Pro Per

Los Angeles County, California

www.royalequestrian.net

Dated: ___08/04/26___

## VERIFICATION

I, MARZENA CHMIELEWSKA, declare as follows:

I am the Plaintiff in this action. I have read the foregoing Complaint and know its contents. The statements therein are true and correct to the best of my knowledge, information, and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this Verification was executed in Los Angeles County, California.

_____

MARZENA CHMIELEWSKA

Los Angeles County, California

Dated: _08/04/26_____