FILED

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

2026 AUG 11  PM 1:53

CLERK U.S. DISTRICT COURT
DIST. OF CALIF.
LOS ANGELES

BY_____

**MARZENA CHMIELEWSKA,** an Individual, Brand Designer, Brand Creator, and U.S. Trademark Registrant;

    **Plaintiff,**

v.

**THE COUNTRY CLUB (NORTHILL) LTD,** a Foreign Corporation incorporated in England, doing business in the United States and the State of California under the name "Royal Equestrian";

**PATRICE BATES** (a/k/a "Patsy Bates"), an Individual, Director, and Controlling Officer of The Country Club (Northill) Ltd; and

**KATHRYN MARGARET BATES,** an Individual, Director, Controlling Officer, and Agent of The Country Club (Northill) Ltd,

    **Defendants.**

Case No.: [To be assigned by Clerk]  2:26-CV-08912-JFW-SSC (x)

## PLAINTIFF'S EX PARTE APPLICATION FOR:
### (1) TEMPORARY RESTRAINING ORDER;
### (2) ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION; AND
### (3) MANDATORY EVIDENCE PRESERVATION ORDER (ESI)

(FRCP 65; 15 U.S.C. § 1116; C.D. Cal. L.R. 65-1)

### MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Marzena Chmielewska respectfully move this Court ex parte for a Temporary Restraining Order pursuant to Federal Rule of Civil Procedure 65 and 15 U.S.C. § 1116, directing Defendants THE COUNTRY CLUB (NORTHILL) LTD, PATRICE BATES, and KATHRYN MARGARET BATES (NORTHILL) LTD to immediately cease all commercial use of Plaintiff's registered trademark "ROYAL EQUESTRIAN" within the United States, pending a hearing on Plaintiff's motion for a Preliminary Injunction.

This TRO is necessary because Defendant's infringement is not a borderline dispute — it is a documented scheme of deliberate bad faith. Defendant: (a) received formal Cease and Desist notice on November 4, 2025; (b) responded to Plaintiff's prior trademark assertion not by asserting any competing right, but by offering to sell its business — implicitly acknowledging Plaintiff's superior rights; (c) refused to comply with the Cease and Desist and continued all U.S.-directed commercial operations under the identical mark without interruption; (d) was previously found to have infringed by Meta Platforms, whose enforcement action Defendant deliberately circumvented by immediately creating a new replacement Facebook page and a new Instagram account.

Defendant's escalating pattern of bad-faith conduct — combined with the ongoing, irreparable consumer confusion it generates — demonstrates that only an immediate Court Order will stop the harm. All four TRO factors are satisfied, and Plaintiff respectfully requests that the Court issue the Order ex parte and set this matter for an Order to Show Cause hearing within 14 days.

## II. FACTUAL BACKGROUND

### A. Plaintiff's Brand and Registered Rights

Plaintiff Marzena Chmielewska is the designer and creator of the luxury equestrian fashion brand "ROYAL EQUESTRIAN." Plaintiff has built the brand into a recognized commercial identity in the United States since January 2019, including through: original designed apparel collections bearing the registered mark (including the signature Cecile Breeches collection); a Macy's retail partnership; a product placement on Season 15 of the Bravo television series *Real Housewives of Beverly Hills*, reaching millions of U.S. viewers; press releases distributed nationally across the USA TODAY Network via EIN Presswire; and a social media audience with millions of content views reaching U.S. equestrian consumers.

Plaintiff holds USPTO Trademark Registration No. 7,411,726 for "ROYAL EQUESTRIAN," covering Class 18 (bags and leather goods), Class 25 (clothing and apparel), and Class 35 (online retail storefront services). Plaintiff also holds matching registrations in the UK (UK00918035935, filed 14 March 2019), EU (018035935), and Australia (2346503). Defendant holds no trademark registration for "Royal Equestrian" anywhere in the world.

### B. Defendant's Identity Capture Scheme

Defendants THE COUNTRY CLUB (NORTHILL) LTD, PATRICE BATES, and KATHRYN MARGARET BATES (NORTHILL) LTD is a foreign corporation incorporated in England that operates an online retail platform under the domains royalequestrian.com and royalequestrian.co.uk, and the Instagram handle @royal_eq. Defendant is a multi-brand reseller selling third-party products from KASK, Samshield, Parlanti, Cavalleria Toscana, Charles Owen, De Niro Boot Co., Dy'on, Veredus, and others. Defendant owns no original products, no trademark registration, and no proprietary "Royal Equestrian" brand identity. Defendant's website checkout actively accepts U.S. consumer orders with the United States pre-selected as a shipping destination, confirming deliberate commercial targeting of the U.S. market.

Plaintiff operates as a luxury equestrian brand running active advertising campaigns on Meta (Facebook and Instagram) and Google, including high-production video content that reaches millions of consumers — individual videos have achieved 1.9 million views and the brand's Instagram account @royalequestriancollection has 88,100 followers with 291,400 views in a single 30-day period. Consumers who discover Plaintiff's brand through these advertising campaigns and viral video content then search "Royal Equestrian" online. Those consumers find Defendants' website royalequestrian.co.uk operating under the identical name and selling third-party brands — Samshield, KASK, Parlanti, and 19 additional brands. Those consumers purchase from Defendants believing they are buying from Plaintiff's brand. They then contact Plaintiff — the brand they originally discovered through advertising — to follow up on orders placed with Defendants. This is the precise mechanism by which Defendants exploit Plaintiff's advertising investment and brand recognition to capture Plaintiff's consumers. Every dollar Plaintiff invests in advertising drives consumers to search "Royal Equestrian" — and Defendants capture those consumers at the point of search.

## C. Documented Actual Consumer Confusion

Defendant's use of the identical mark has caused documented actual consumer confusion in the United States. At minimum, one U.S. consumer purchased a Samshield helmet through Defendant's storefront under the mistaken belief that they were transacting with Plaintiff's brand, and subsequently contacted Plaintiff at www.royalequestrian.net to follow up on that purchase — a direct, documented instance of actual confusion. Additional U.S. and global consumers have contacted Plaintiff's California operations believing Plaintiff to be the corporate parent or authorized manufacturer of Defendant's store.

## D. Meta Platforms Enforcement and Defendant's Deliberate Circumvention

Plaintiff filed a formal intellectual property complaint with Meta Platforms, Inc. Meta independently verified Plaintiff's superior legal priority and permanently terminated and deactivated Defendant's original Facebook business page operating under the "Royal Equestrian" name. Defendant responded by immediately creating a new replacement Facebook business page and a new Instagram profile under the handle @royal_eq. This deliberate and calculated circumvention of a platform enforcement action demonstrates that Defendant views enforcement actions as obstacles to be routed around, not as legal requirements to be followed. Only a Court Order will stop the infringement.

## E. The Cease and Desist Correspondence — Defendant's Admission of Inferior Rights

On November 3, 2025, Plaintiff sent a formal trademark assertion letter to Defendant at info@royalequestrian.co.uk, identifying Plaintiff's globally registered trademark rights, documenting the ongoing consumer confusion and commercial damage, and offering two options: enter an authorized reseller arrangement, or cease all use of the "Royal Equestrian" name immediately.

Defendant's representative, Kathryn, responding under the signature block "Royal Team, Royal Equestrian," replied without asserting any prior trademark right, without producing any registration, and without challenging Plaintiff's claim. Instead, she offered: "If you would like to set up a meeting regarding the potential purchase of our business and websites, I would be more than happy to arrange a time." This offer to sell is a dispositive admission of

inferior rights. A party confident in the superiority of its own legal position does not offer to sell its business in response to a trademark assertion — it asserts its rights.

On November 4, 2025, Plaintiff issued the formal Cease and Desist, explicitly rejecting the buyout: "We are not interested in purchasing your store, your domains or any of your business assets." Defendant refused to comply and has continued all infringing activities without interruption from that date to the present. Post-notice continuation of infringement is willful as a matter of law.

### F. The Public Bait-and-Switch Admission

When formally confronted by House of Royal Group LLC, Defendant's owner posted the following public statement via the official merchant handle "Royal Equestrian (Owner)":

> *"We can certainly confirm that we are 100% nothing to do with the company you mention. We are in no way affiliated with their products, website or service. We are a UK supplier selling top equestrian brands."*

Defendant thereby simultaneously: (a) admitted it has no affiliation with Plaintiff; (b) confirmed it is merely a third-party reseller with no proprietary brand; (c) refused to change its name; and (d) continued all U.S.-directed commercial operations. This is a textbook bait-and-switch: using Plaintiff's registered identity to attract consumers, then profiting from the resulting confusion.

### G. Retaliatory UK Proceedings — The Full Pattern of Bad Faith

The pattern is unambiguous: Defendants responded to a legitimate trademark enforcement action not by asserting any pre-existing rights, but by attempting to sell their business — an implicit acknowledgment that Plaintiff's position was superior. When that failed, Defendants simply continued all infringing commercial operations without modification, generating U.S. revenue under Plaintiff's registered name.

The full pattern of conduct is now completely visible: Defendants appropriated a designer's registered trademark without authorization, refused to stop when caught, attempted to sell the name back to its rightful owner for a commercial profit, and when that failed, simply continued generating U.S. revenue under a name they knew belonged to Plaintiff — an attempt to coerce Plaintiff Marzena Chmielewska, the designer and creator of the ROYAL EQUESTRIAN brand, into accepting that her registered trademark would be used by others without consequence. That is not a legitimate commercial position. It is the conduct of a party that knows it has no rights. This Court's intervention is not merely warranted — it is necessary.

## III. LEGAL STANDARD

A temporary restraining order requires showing: (1) likelihood of success on the merits; (2) likelihood of irreparable harm absent relief; (3) balance of equities tips in movant's favor; and (4) relief is in the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). The Ninth Circuit also permits issuance where "serious questions going to the merits" are raised and the balance of hardships tips sharply in plaintiff's favor. *Alliance*

*for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32 (9th Cir. 2011). All four factors are overwhelmingly satisfied here.

## IV. ARGUMENT

### A. Likelihood of Success on the Merits Is Overwhelming

To prevail on a trademark infringement claim under 15 U.S.C. § 1114, a plaintiff must show: (1) ownership of a valid, registered mark; and (2) defendant's use of a similar mark is likely to cause consumer confusion. *Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1046 (9th Cir. 1999).

Both elements are established beyond question:

> **Element 1 — Valid registered mark:** Plaintiff holds USPTO Registration No. 7,411,726. Registration constitutes prima facie evidence of validity and Plaintiff's exclusive right to use the mark in commerce. 15 U.S.C. § 1057(b). Defendant holds no registration anywhere in the world.

> **Element 2 — Likelihood of confusion:** The marks are identical. The goods and services are identical (retail apparel and accessories). The channels of trade are identical (online). The degree of consumer care is low to moderate. And critically, actual confusion has already occurred and is in evidence. When actual confusion is established, likelihood of confusion is conclusively demonstrated. *Playboy Enterprises, Inc. v. Netscape Commc'ns Corp.*, 354 F.3d 1020, 1026 (9th Cir. 2004).

No factor in the *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979), analysis favors Defendant. Likelihood of success on the merits is not merely probable — it is overwhelming.

### B. Irreparable Harm Is Established

The Ninth Circuit recognizes that trademark infringement causes irreparable harm because injury to goodwill and brand identity cannot adequately be remedied by monetary damages. *Herb Reed Enterprises, LLC v. Florida Entm't Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013). The irreparable harm here is compounded by three case-specific factors:

> **(i) Defendant will not stop voluntarily.** Despite formal Cease and Desist notice in November 2025, Defendant has continued all infringing activities without modification. Defendant also circumvented Meta's enforcement action by recreating its accounts immediately after takedown. The history of this dispute demonstrates that Defendant views each enforcement action as a problem to be worked around rather than a legal obligation to be honored. Only a Court Order will produce compliance.

> **(ii) Ongoing, daily U.S.-directed harm.** Defendant's website accepts U.S. consumer orders every day this litigation proceeds. Consumer confusion accumulates in real time. Goodwill damage cannot be unwound retroactively.

> **(iii) Luxury brand harm is inherently unquantifiable.** ROYAL EQUESTRIAN is positioned as a luxury equestrian fashion brand. Consumer association of that mark with a third-party reseller of mass-market equestrian equipment causes qualitative

brand positioning damage that cannot be fully compensated by a future monetary award.

**(iv) Active consumer data harvesting.** Fake storefronts at royalehorse.shop and royalequestriangear.shop display Plaintiff's registered trademark and copyrighted photographs to attract consumers, then operate contact forms directing consumer personal data — names and email addresses — to support@royalequestrian.com, info@royalequestrian.com, and info@royalequestrian.co.uk — all domains controlled by Defendants. Consumers who believe they are contacting Plaintiff's brand are submitting their personal information directly into Defendants' email infrastructure. This consumer data, once collected, cannot be recovered or deleted by any court order retroactively. Each day this scheme continues additional consumers are deceived and their personal data is harvested — a form of irreparable harm that no monetary award can remedy.

**(v) Undisclosed territorial sales restrictions.** Defendants operate as a multi-brand equestrian retailer stocking products from no fewer than 22 brands, including Parlanti, Veredus, Helite, Samshield, KASK, GPA, Passier, Antares, De Niro Boot Co, Fabbri, Stübben, Pikeur, Cavalleria Toscana, Equiline, Flex-On, Charles Owen, KEP Italia, Sergio Grasso, Sprenger, Dy'on, Vestrum, and Zandona. On information and belief, the majority of these brand manufacturers maintain exclusive US distribution agreements or authorized US dealer networks that restrict or prohibit unauthorized European retailers from shipping their products to US consumers. Plaintiff believes that Defendants have used the commercial traffic generated by their unauthorized operation under Plaintiff's registered trademark — including US consumer traffic diverted through the royalequestrian.com domain redirect and US-targeted Google Ads campaigns — to solicit and fulfill orders for these brands' products to consumers in the United States. Plaintiff seeks discovery of all dealer agreements, territorial restriction communications, invoices, and shipping records relating to US sales of any of the foregoing brands' products, and reserve all rights arising from any territorial violations that discovery may reveal.

**(vi) Systematic destruction of wholesale commercial channel.** Plaintiff is a pure luxury brand — every product bearing the ROYAL EQUESTRIAN trademark is an original design created by CC, Plaintiff's founder. Plaintiff's commercial strategy depends entirely on independent equestrian boutiques and retailers recognizing Royal Equestrian as a luxury design house — a brand they can carry alongside Samshield, KASK, Parlanti, and other third-party brands. Defendants have destroyed this channel by operating as a multi-brand retailer — selling Samshield, KASK, Parlanti, and 19 additional brands — under Plaintiff's identical registered trademark. When an independent boutique searches "Royal Equestrian" to evaluate Plaintiff as a wholesale partner, they find Defendants operating as a competing multi-brand retailer selling the same brands that boutique already stocks. That boutique concludes Plaintiff is a competitor — another multi-brand retailer — not a luxury brand they could carry. The wholesale relationship ends before it begins. Plaintiff never knows the opportunity was lost. This silent, invisible, ongoing destruction of wholesale partnerships cannot be quantified and cannot be remedied by any monetary award. It is the most commercially devastating harm Plaintiff suffers — and it compounds

every single day Defendants continue operating under Plaintiff's registered trademark name. Plaintiff's wholesale partnership strategy is documented in the May 14, 2026 press release attached as Exhibit W.

**(vii) Pattern of deliberate disregard for legal obligations.** Defendants have demonstrated through consistent conduct that they will not voluntarily comply with any legal obligation that interferes with their commercial operations: they ignored Plaintiff's November 2025 Cease and Desist; they immediately recreated their social media presence after Meta Platforms terminated their account for infringement; they continued US-targeted Google Ads campaigns throughout all enforcement actions; and on the date of this filing they actively processed a US consumer order for a third-party product that on information and belief is subject to exclusive US distribution arrangements prohibiting its sale by European retailers to US consumers — demonstrating simultaneous violation of Plaintiff's trademark rights and their own contractual obligations to brand manufacturers. This documented pattern of deliberate disregard for all legal obligations establishes with certainty that Defendants will continue infringing absent court intervention — making injunctive relief the only effective remedy.

The only "harm" to Defendant from this Order is being required to stop using a name to which it has never held any legal right. Courts in the Ninth Circuit have consistently held that a defendant has no cognizable interest in continuing to profit from an infringing mark. *Brookfield Commc'ns*, 174 F.3d at 1066. Defendant holds no trademark registration in any jurisdiction. Defendant offered to sell its business rather than assert any prior right. The equities are entirely and unambiguously with Plaintiff.

## D. The Public Interest Favors Immediate Relief

The Lanham Act's core purpose is to protect consumers from deception about commercial origin. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 774 (1992). Defendant's own public admission — that it has "100% nothing to do" with Plaintiff while trading under Plaintiff's registered mark — is a textbook example of the consumer deception the Lanham Act was enacted to prevent. The public interest is directly served by this Order.


## V. EVIDENCE PRESERVATION ORDER

Plaintiff further request an Order pursuant to FRCP 26 and 37 requiring Defendant and its service providers to immediately preserve all electronically stored information (ESI) relevant to this dispute. Defendant operates a UK-based business with cloud-hosted infrastructure that may be subject to routine data purging, automated deletion, or modification across jurisdictions. Without preservation, critical evidence of the infringing conduct, the consumer confusion incidents, and Defendant's financial records relating to U.S. consumers may be permanently lost before discovery commences.

The Order should require preservation of: all website backend records, transaction logs, and customer databases; all social media account data, advertising records, and audience analytics; all email and electronic communications referencing "Royal Equestrian," Plaintiff, or this dispute including the November 2025 Cease and Desist correspondence; and

suspension of all automated data purging policies for the pendency of this litigation. The Order should further require preservation of the following specific categories:

(a) All website backend records, database backups, server logs, and technical infrastructure records;

(b) All customer records, transaction histories, order databases, and records of any purchase by a U.S. consumer;

(c) All social media account data, advertising records, audience analytics, and messaging histories across all platforms;

(d) All email and electronic correspondence referencing Royal Equestrian, Plaintiff, House of Royal Group LLC, this dispute, or the November 2025 Cease and Desist correspondence;

(e) All financial records relating to revenues, payments, or transactions involving U.S. consumers;

(f) All purchase invoices, supplier invoices, purchase orders, and procurement records from every brand whose products appear or have appeared on Defendants' website or storefront, including but not limited to KASK, Samshield, Parlanti, Cavalleria Toscana, Equiline, Charles Owen, De Niro Boot Co., Dy'on, Veredus, Boss Equestrian, Eskadron, Pikeur, Flex-On, GPA, Kentucky Horsewear, Vestrum, Stübben, Antares, Bomber Bits, Cavalor, Evoke, Fabbri, Grooming Deluxe, Helite, Kentucky Dogwear, Kentucky Rider Wear, KEP Italia, Passier, Rider's Gene, Roeckl, Sergio Grasso, Sprenger, Trolle Projects, Utzon Equestrian, VIP Equestrian, Waldhausen, Zandona, and Eqode by Equiline, specifically including any terms, conditions, territorial restrictions, or geographic limitations contained in or attached to those invoices or purchase orders;

(g) All dealer agreements, reseller agreements, distribution contracts, and authorization letters between Defendants and any brand principal or brand distributor, including all territorial restriction clauses and any correspondence regarding authorization to sell into the United States, Canada, or Mexico;

(h) All records of sales, shipments, and financial transactions involving customers with United States, Canadian, or Mexican shipping or billing addresses, itemized by brand and time period; and

(i) All communications between Defendants and any brand principal or distributor concerning geographic territory, sales restrictions, authorization to sell in North America, or any complaint regarding Defendants' sales activity outside the United Kingdom.

## VI. EX PARTE NOTICE

Plaintiff seeks this Order on an ex parte basis pursuant to FRCP 65(b)(1). Defendant is incorporated in England. Providing advance notice would alert Defendant — which has already demonstrated willingness to circumvent enforcement actions by recreating infringing social media accounts after platform takedowns — creating a material risk that Defendant

would delete evidence, restructure operations, or otherwise undermine the relief sought before this Court can act.

The limited and targeted nature of this Order (ceasing use of an infringing mark and preserving evidence) means the risk of harm from ex parte procedure is minimal and fully remediable at the Order to Show Cause hearing. Plaintiff will serve Defendant with all papers immediately upon issuance pursuant to FRCP 4 and, where applicable, the Hague Convention on Service Abroad, to which the United Kingdom is a signatory. Proof of service will be filed within 72 hours.

## VII. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court: (1) issue the Temporary Restraining Order as set forth in the Proposed Order filed concurrently herewith; (2) schedule an Order to Show Cause hearing within 14 days; and (3) issue the ESI Preservation Order.

Respectfully submitted,

MARZENA CHMIELEWSKA

Plaintiff In Pro Per

Los Angeles County, California

www.royalequestrian.net

Dated: _08/04/26_