LODGED

2026 AUG 11 PM 1:53

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

**MARZENA CHMIELEWSKA,** an Individual, Brand Designer, Brand Creator, and U.S. Trademark Registrant;

**Plaintiff,**

v.

**THE COUNTRY CLUB (NORTHILL) LTD,** a Foreign Corporation incorporated in England, doing business in the United States and the State of California under the name "Royal Equestrian";

**PATRICE BATES** (a/k/a "Patsy Bates"), an Individual, Director, and Controlling Officer of The Country Club (Northill) Ltd; and

**KATHRYN MARGARET BATES,** an Individual, Director, Controlling Officer, and Agent of The Country Club (Northill) Ltd,

**Defendants.**

**Case No.:** [To be assigned by Clerk] 2:26-cv-08912-JFW-SSC (x)

**[PROPOSED] TEMPORARY RESTRAINING ORDER,**
**ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION,**
**AND MANDATORY EVIDENCE PRESERVATION ORDER**

The Court, having reviewed Plaintiff's Ex Parte Application for a Temporary Restraining Order, the supporting Memorandum of Points and Authorities, the Complaint filed herewith, and the Declaration of Marzena Chmielewska filed in support thereof, and the Court having determined that:

(1) Plaintiff has demonstrated a strong likelihood of success on the merits of their claims under 15 U.S.C. § 1114 and § 1125(a), based on Plaintiff's valid federally registered trademark (USPTO Reg. No. 7,411,726) and Defendant's identical unauthorized use of that mark directed at U.S. consumers;

(2) Plaintiff has shown a likelihood of irreparable harm absent relief, including ongoing consumer confusion, dilution of brand goodwill, loss of commercial reputation, active consumer data harvesting through fake storefronts operating under Plaintiff's registered trademark, and destruction of wholesale partnership opportunities caused by Defendants' operation as a competing multi-brand retailer under Plaintiff's registered trademark name — all of which cannot adequately be remedied by monetary damages;

(3) The balance of equities tips decidedly in Plaintiff's favor, as Defendant holds no trademark registration in any jurisdiction and therefore has no cognizable legal right disturbed by this Order; and

(4) The public interest in protecting consumers from commercial deception and in enforcing validly registered trademarks is served by this Order,

**IT IS HEREBY ORDERED AS FOLLOWS:**

## I. TEMPORARY RESTRAINING ORDER — CEASE AND DESIST

Defendants THE COUNTRY CLUB (NORTHILL) LTD, PATRICE BATES, and KATHRYN MARGARET BATES (NORTHILL) LTD, its officers, directors, owners, agents, employees, servants, representatives, successors, assigns, and all persons acting in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are hereby immediately RESTRAINED AND ENJOINED from:

**(a) USE OF MARK:** Using the name "ROYAL EQUESTRIAN," or any colorable imitation or confusingly similar variation thereof, in any commercial context directed at consumers in the United States, including but not limited to websites, domain names, social media platforms, digital advertising, email marketing, product listings, catalogs, or any other commercial medium;

**(b) WEBSITE OPERATIONS:** Displaying, maintaining, or operating any website, landing page, or online storefront under or incorporating the "Royal Equestrian" name or mark that targets U.S. consumers, including but not limited to content hosted at royalequestrian.com, royalequestrian.co.uk, or any substantially similar domain;

**(c) SOCIAL MEDIA OPERATIONS:** Operating, posting to, or commercially using any social media account, page, or profile under or incorporating the "Royal Equestrian" name directed at U.S. consumers, including but not limited to the Instagram account @royal_eq and any Facebook business pages under the Royal Equestrian name;

**(d) CONTENT MISAPPROPRIATION:** Displaying, reproducing, or commercially exploiting in any U.S.-directed medium any product photography, creative content, design imagery, or brand materials created by or belonging to Plaintiff without Plaintiff's express written authorization;

**(e) FALSE AFFILIATION:** Representing to any U.S. consumer or business, in any medium, that Defendant is affiliated with, sponsored by, authorized by, or otherwise connected to Plaintiff or the ROYAL EQUESTRIAN brand.

## II. MANDATORY EVIDENCE PRESERVATION ORDER (ESI)

Defendant and all persons acting in concert with Defendant, including web-hosting providers, domain registrars, and platform operators, are hereby ORDERED to immediately preserve, and are STRICTLY PROHIBITED from deleting, modifying, wiping, or destroying, any electronically stored information (ESI) related to this action, including:

**(a)** All website backend records, database backups, server logs, and technical infrastructure records;

**(b)** All customer records, transaction histories, order databases, and records of any purchase by a U.S. consumer;

**(c)** All social media account data, advertising records, audience analytics, and messaging histories across all platforms;

**(d)** All email and electronic correspondence referencing "Royal Equestrian," Plaintiff, House of Royal Group LLC, this dispute, or the November 2025 Cease and Desist correspondence; and

**(e)** All financial records relating to revenues, payments, or transactions involving U.S. consumers.

(f) All purchase invoices, supplier invoices, purchase orders, and procurement records from every brand whose products appear or have appeared on Defendants' website or storefront, including but not limited to KASK, Samshield, Parlanti, Cavalleria Toscana, Equiline, Charles Owen, De Niro Boot Co., Dy'on, Veredus, Boss Equestrian, Eskadron, Pikeur, Flex-On, GPA, Kentucky Horsewear, Vestrum, Stübben, Antares, Bomber Bits, Cavalor, Evoke, Fabbri, Grooming Deluxe, Helite, Kentucky Dogwear, Kentucky Rider Wear, KEP Italia, Passier, Rider's Gene, Roeckl, Sergio Grasso, Sprenger, Trolle Projects, Utzon Equestrian, VIP Equestrian, Waldhausen, Zandona, and Eqode by Equiline, specifically including any terms, conditions, territorial restrictions, or geographic limitations contained in or attached to those invoices or purchase orders;

(g) All dealer agreements, reseller agreements, distribution contracts, and authorization letters between Defendants and any brand principal or brand distributor, including all territorial restriction clauses, geographic limitation provisions, and any correspondence regarding authorization to sell into the United States, Canada, or Mexico;

(j) All dealer agreements, distribution agreements, territory agreements, authorized reseller agreements, and communications with the following brand manufacturers or their US exclusive distributors, relating to any restriction, prohibition, or limitation on

Defendants' right to sell those brands' products to consumers in the United States: Parlanti / Parlanti International (exclusive US distributor: Parlanti International Inc., Wellington, Florida — info@shop-parlantiusa.com); Veredus / Veredus USA (exclusive US distributor: Equinavia, Watertown, Connecticut — order@equinavia.com); Helite (official US/Canada exclusive distributor: Heliteus); Samshield / Samshield America; KASK Equestrian / KASK America; GPA Helmets / GPA Sport USA; Passier USA; Antares Riding Hats USA; De Niro Boot Co USA; Fabbri Boots USA; Stübben America; Pikeur USA; Cavalleria Toscana USA; Equiline America; Flex-On USA; Charles Owen USA; KEP Italia USA; Sergio Grasso USA; Sprenger USA; Dy'on USA; Vestrum USA; and Zandona USA; including but not limited to any communications in which Defendants were notified of territorial sales restrictions applicable to the United States, any communications in which Defendants confirmed or acknowledged such restrictions, and any evidence of sales of any of the foregoing brands' products to consumers with United States shipping addresses;

(k) All records relating to the Microsoft 365 / Office 365 tenant associated with the domain royalequestrian.com, including account creation records, account holder identity and billing information, all email accounts created under that domain, all emails received at support@royalequestrian.com or any address under royalequestrian.com, and all login and access records for that tenant; and

(l) All records relating to the registration, configuration, operation, and email infrastructure of the domains royalequestrian.com, royalehorse.shop, and royalequestriangear.shop, including registrant identity, payment records, DNS configuration, and all consumer communications received through those domains.

(m) All correspondence, emails, and communications sent to or received from info@royalequestrian.co.uk and info@royalequestrian.com, including all consumer inquiries, order confirmations, shipping notifications, returns communications, supplier communications, and all communications relating to US consumers or the US market from 2019 to the date of this Order; and

(n) All records relating to the royalequestrian.co.uk website including all pages, product listings, pricing, shipping policies, returns policies, and all historical versions of the website from 2019 to the date of this Order, including all server logs, analytics data, and records of visitor traffic by geographic location showing US consumer visits.

(j) All records held by Microsoft Corporation relating to the Microsoft 365 / Office 365 email tenant associated with the domain royalequestrian.com, including account creation records, account holder identity and billing information, all email accounts created under royalequestrian.com, all emails received at support@royalequestrian.com or any address under that domain, and all login and access records for that tenant.

(h) All records of sales, shipments, fulfilled orders, and financial transactions involving customers with United States, Canadian, or Mexican shipping or billing addresses, itemized by brand and by time period; and

(i) All communications, written or electronic, between Defendants and any brand principal, brand distributor, or brand representative concerning geographic territory, sales restrictions, authorization to sell in North America, or any complaint or inquiry from any brand regarding Defendants' sales activity outside the United Kingdom.

Defendant's automated data purging, email overwriting, and data retention policy enforcement are hereby SUSPENDED for the duration of this litigation. IT IS FURTHER ORDERED that the preservation obligation specifically includes the following categories of records: (f) All dealer agreements, distribution contracts, territorial restriction clauses, authorization letters, and all communications between Defendant and any brand whose products appear or have appeared on Defendant's website or storefront, including but not limited to KASK, Samshield, Parlanti, Cavalleria Toscana, Equiline, Charles Owen, De Niro Boot Co., Dy'on, Veredus, and Boss Equestrian, pertaining in any way to authorization — or the absence of authorization — to sell those brands' products to consumers located in the United States; (g) All records of sales, shipments, fulfilled orders, and related financial transactions involving customers with United States shipping addresses or billing addresses, itemized by brand and by time period; (h) All communications, written or electronic, between Defendant and any United States-based distributor or brand representative, including but not limited to Parlanti International, Samshield USA, Equiline America, and KASK USA, relating to U.S. sales, territorial restrictions, or distributor authorization; and (i) All internal records, emails, or communications in which Defendant's officers, directors, or employees discussed sales to U.S. customers, U.S. geographic territory, territorial restriction compliance, or any complaint or inquiry from a brand principal or U.S. distributor regarding Defendant's U.S. sales activity.

## III. ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION

IT IS FURTHER ORDERED that Defendant shall appear before this Court on __________________, 2026, at __________ a.m./p.m., in Courtroom _____, United States Courthouse, 350 West 1st Street, Los Angeles, California 90012, to SHOW CAUSE why this Temporary Restraining Order should not be converted into a Preliminary Injunction to remain in effect pending final judgment at trial.

**Briefing Schedule:**

Defendant's Opposition papers, if any, shall be filed and served no later than __________________, 2026.

Plaintiff's Reply, if any, shall be filed and served no later than __________________, 2026.

Failure of Defendant to appear at this hearing may result in entry of a permanent injunction and such additional relief as the Court deems appropriate.

## IV. SERVICE OF PROCESS

Plaintiff shall promptly serve a copy of this Order, the Complaint, the Ex Parte Application, and all supporting papers on Defendant pursuant to FRCP 4 and, where applicable, the Convention on the Service Abroad of Judicial and Extrajudicial Documents (Hague Convention), to which the United Kingdom is a signatory. Proof of service shall be filed with this Court within seventy-two (72) hours of issuance, or as soon as practicable thereafter.

## V. DURATION

This Order shall remain in effect until the conclusion of the Order to Show Cause hearing scheduled above, unless earlier dissolved, modified, or extended by this Court.

SO ORDERED this _______ day of _________________, 2026, at _________ a.m./p.m.

_________________________________

UNITED STATES DISTRICT JUDGE

Central District of California, Western Division